IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DEBORAH J. SPAULDING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-12-344-D |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her application for benefits on April 29, 2008. (TR 219-221, 297). In her application, she alleged that she became disabled on June 1, 2008, due to

chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea ("OSA"), asthma, diabetes, and depression. (TR 219, 259). At the time she filed her application, Plaintiff was 50 years old and working part-time at the Edwin Fair Mental Health Center as a "family support provider," although she had worked full-time in this position from January 2001 until June 1, 2008 (TR 224, 259, 260, 267). She also described previous work as an administrative assistant, cook, custodian, and "subs[titute] teacher." (TR 260).

Plaintiff and her spouse submitted separate reports describing Plaintiff's usual daily activities and functional limitations. (TR 248-257, 300-307). Plaintiff also submitted medical records reflecting she had been treated beginning in 1997 by Dr. Garland, a family physician. Dr. Garland's office notes include diagnoses for various conditions, including type II diabetes mellitus (beginning August 2003), COPD (beginning July 2003), OSA (beginning November 1998), obesity, mood disorder (April 2007 and April 2008), depression (1998, 2006, and 2007), asthma (2005, 2007), and gastrointestinal reflux disease ("GERD")(2005).

In August 2006, Plaintiff weighed 312 pounds, and she was 5'4" tall. (TR 371). Plaintiff underwent a laparoscopic adjustable gastric band operation in September 2006. (TR 540). The surgeon, Dr. Walton, stated in November 2006 that Plaintiff was doing well following the operation. (TR 540). In September 2007, Dr. Walton noted that Plaintiff had not changed her lifestyle and needed to "come to grips with the fact that she needs to change her lifestyle, including a food plan and exercise plan." (TR 533). Dr. Walton noted he had also referred Plaintiff for counseling but she had not followed through with this advice. (TR 533).

In April 2008, Plaintiff underwent a pulmonary function test, and the spirometry testing was interpreted as within normal limits. (TR 418-421). In September 2008, Dr. Garland opined that Plaintiff's "psychological state limits her ability to function at her job. Her obesity and chronic fatigue limits [sic] her physical ability to perform [due] to decreased endurance." (TR 591).

Dr. Garland completed a physical medical source statement in September 2008. (TR 517-518). On this form, Dr. Garland indicated Plaintiff was capable of sitting 6 hours, standing 4 hours, and walking four hours in an 8-hour workday. (TR 517). Dr. Garland also stated that Plaintiff could frequently lift up to 25 pounds and occasionally lift up to 25 pounds. (TR 517). Dr. Garland further opined that Plaintiff could not bend, squat, crawl, or climb and that she should not work around unprotected heights or be exposed to dust, fumes, or gases. (TR 518). In explanation, Dr. Garland noted that due to COPD/asthma and morbid obesity Plaintiff had limited mobility, she was unable to tolerate extreme temperatures, smoke, or dust, and she had decreased endurance. (TR 518).

Dr. Garland prescribed a mood-stabilizing medication, Abilify®, for Plaintiff in March 2008 (TR 462), and Plaintiff reported in September 2008 that the medication was helpful. (TR 588).

In August 2008, Dr. Dan Smith, Ph.D., conducted a consultative psychological evaluation of Plaintiff for the agency. (TR 490-496). Dr. Smith noted that during an interview, when asked if she was motivated to work, Plaintiff stated that she was "burned out." (TR 495). Based on her history and a mental status examination, Dr. Smith noted a

diagnostic impression of major depression, moderate, and adjustment disorder with anxiety and depression. (TR 496).

An agency medical consultant, Dr. Cynthia Kampschaefer, Psy.D., completed a mental psychiatric review technique form and a mental residual functional capacity form in August 2008. (TR 497-513). In these forms, Dr. Kampschaefer opined that Plaintiff had an affective disorder resulting in moderate activities of daily living, moderate restrictions in social functioning, and moderate difficulties in concentration, persistence, or pace. (TR 500, 507). Dr. Kampschaefer opined that Plaintiff could perform simple and some complex tasks, she could relate to others on a superficial work basis, and she could adapt to a work situation. (TR 513).

In July 2009, Dr. Garland noted that Plaintiff was not taking her medications as directed. (TR 600). In August 2009, Dr. Garland noted that Plaintiff had "lost [her] job." (TR 599). In January 2010, Plaintiff was treated at a hospital emergency room for cervical strain following an automobile accident. (TR 617-618). The examining physician noted that Plaintiff exhibited full range of motion in all joints, she was alert and oriented, and x-rays of her cervical spine showed no fracture. (TR 618).

In August 2010, Plaintiff sought treatment from Dr. James Fast, D.O., who noted Plaintiff's report that she had not taken her diabetic medication for over a year. She complained of coughing and pain in her hip and knee due to arthritis. (TR 655). Dr. Fast's diagnostic impression was non-insulin-dependent diabetes mellitus, COPD, OSA, and tobacco use disorder. (TR 656).

In February 2011, Plaintiff sought treatment at a hospital emergency room after an episode of dizziness without chest pain. (TR 642). The examiner noted that a physical examination, mental status evaluation, electrocardiogram, laboratory, and chest x-ray testing were "completely normal," and Plaintiff was discharged. (TR 645).

In April 2011, Plaintiff sought treatment at a mental health clinic where she was evaluated by Ms. Deborah Brantley, MS, CNS. Ms. Brantley's diagnostic impression was bipolar disorder II, obsessive-compulsive disorder, and anxiety disorder not otherwise specified, for which mood-stabilizing and anti-depressant medications were prescribed. (TR 669-670). Ms. Brantley noted that Plaintiff sought help for depression, anxiety, and possible mood disorder, that she would lose her unemployment benefits in April 2011, and that she described episodes of heavy drinking and angry outbursts. (TR 669).

In July 2011, Ms. Brantley noted that Plaintiff was not taking her prescribed mood-stabilizing and anti-depressant medications, although Plaintiff reported she was "getting paid next week" and would start taking her medications then. (TR 668). Ms. Brantley completed a mental residual functional capacity form for Plaintiff dated September 20, 2011. (TR 652-654). Ms. Brantley opined that Plaintiff was moderately or markedly limited in most areas of work-related activities, including markedly limited in her ability to remember locations and work-like procedures, markedly limited in her ability to maintain attention and concentration for extended periods, and moderately limited in her abilities to understand, remember, and carry out short and simple instructions, moderately limited in her ability to maintain regular attendance, moderately limited in her ability to respond to changes in the

work setting, and moderately limited in her ability to interact appropriately with the public and travel in unfamiliar places. (TR 652-653). Ms. Brantley provided no explanation for these opinions.

Plaintiff's application was administratively denied on initial and reconsideration reviews. (TR 99, 100). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Belcher ("ALJ") on September 3, 2009. (TR 64-98). At this hearing, Plaintiff and a vocational expert ("VE") testified. The ALJ issued a decision on November 2, 2009, in which the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (TR 104-113, repeated 324-333). In reaching this conclusion, the ALJ found that despite Plaintiff's severe impairments due to obesity, COPD, asthma, OSA, and depression she was capable of performing work at the light exertional level with certain limitations, including occasionally climbing stairs and ramps, bending, stooping, kneeling, crouching, or crawling, never climbing ladders, ropes, or scaffolding, occasional exposure to heat, cold, dust, fumes, or gases, and "[t]he claimant can perform simple and some complex tasks, can relate to others on a superficial basis, and can adapt to a work situation." (TR 109-110). The ALJ ultimately found that Plaintiff was "capable of performing [her] past relevant work as a family support provider and substitute teacher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (TR 113).

The Appeals Council issued an order on January 22, 2011, in which the Appeals Council vacated the ALJ's decision and remanded the case for further administrative

proceedings. (TR 115-116). The Appeals Council found that the ALJ erred by including mental limitations in the residual functional capacity ("RFC") determination but failing to include these limitations in the hypothetical questioning posed to the VE at the hearing. The Appeals Council explained that the "the record does not contain vocational evidence regarding the extent to which the claimant's mental limitations affect her ability to perform the past jobs as a substitute teacher or family support provider. The [Appeals] Council concludes that additional analysis is warranted to determine if the claimant is capable of performing all of the duties of her past relevant work." (TR 115).

A supplemental administrative hearing was conducted before the same ALJ on October 12, 2011. (TR 28-63). At this hearing, Plaintiff and a VE testified. In a decision issued November 18, 2011, the ALJ again found that Plaintiff was not disabled within the meaning of the Social Security Act as she retained the ability to perform her previous jobs as a case aide and teacher's aide. (TR 11-22). The Appeals Council declined to review this decision. (TR 1-3).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is

supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. Id. In this case, Plaintiff's claim was denied at step five. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

III. ALJ's Decision

Following the sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2008, when she alleged she became disabled. (TR 13). At step two, the ALJ found that Plaintiff had severe impairments due to obesity, COPD, asthma, OSA, degenerative disc disease of the cervical spine, and

depression. (TR 13-14).  At the third step, the ALJ found that the medical evidence with respect to Plaintiff's impairments did not satisfy or equal the requirements for an impairment deemed disabling *per se* under the agency's Listing of Impairments. (TR 14-16).  In reaching this conclusion, the ALJ considered the requirements of Listings 1.04, 3.02, 3.03, and 12.04. Following the procedure for evaluating the severity of Plaintiff's mental impairment, see 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ set forth his findings that Plaintiff's mental impairment had resulted in mild restrictions in daily living activities, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (TR 15).

At step four, the ALJ found that despite Plaintiff's impairments she retained the capacity to perform light work limited to occasional climbing of stairs, bending, stooping, kneeling, crouching, or crawling. (TR 16).  The ALJ further found that Plaintiff's RFC was limited by a need to "avoid climbing ropes, ladders, and scaffolds" and "limited to occasional exposure to heat, cold, dust, fumes, and gases.  She can do simple tasks and some complex work.  She is limited to superficial contact with co-workers, supervisors, and the general public" (TR 16).

In connection with the step four finding, the ALJ found that Ms. Brantley's RFC assessment was inconsistent with the medical evidence of record.  The ALJ gave "[g]reat weight" to the RFC assessment by Plaintiff's treating physician, Dr. Garland, and also gave "great weight" to the opinions by the agency's medical consultants. (TR 20).  The ALJ further found that Plaintiff's complaints of disabling limitations were not entirely credible

for reasons stated in the decision, including Plaintiff's noncompliance with her doctors' advice to stop smoking "for years," and with medications, and the inconsistency between Plaintiff's receipt of unemployment benefits and her application for disability benefits. (TR 20-21).

Relying on the VE's testimony regarding the demands of Plaintiff's previous jobs and the VE's responses to hypothetical questioning at the second hearing, the ALJ found that Plaintiff was not disabled as she retained the capacity to perform her previous jobs as a case aide and teacher's aide. (TR 21).

IV. Step Four

Plaintiff contends that the ALJ failed to correct the deficiencies set forth in the Appeals Council's order of remand.  This particular argument raises an issue that is beyond the jurisdiction of the Court.  The only issues before the Court are whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.

Plaintiff next contends that the ALJ erred by altering the job titles of Plaintiff's previous jobs.  Plaintiff is correct that in the ALJ's first decision, the ALJ described Plaintiff's past relevant jobs and identified her job at the Edwin Fair Mental Health Center between 2001 and 2009 as a "family support provider," which is the title given the job by Plaintiff and the VE who testified at the first administrative hearing.  (TR 35, 75, 94).  The VE who testified at the second administrative hearing stated that this job was more accurately described in the United States Department of Labor's Dictionary of Occupational Titles as

a case aide. (TR 57). The VE testified that this job was classified as light, semiskilled work with a specific vocational preparation ("SVP") of 3. (TR 57). The ALJ did not err in finding, consistent with the VE's testimony, that this previous job was more appropriately identified as that of a case aide.

Plaintiff is also correct that in the ALJ's first decision, the ALJ found that Plaintiff had previously worked as a "substitute teacher." Plaintiff described her previous job as a "subs[titute] teacher." (TR 260). Plaintiff does not, however, have a college degree. She has a high school equivalency degree. (TR 264). The ALJ did not err in finding, consistent with the VE's testimony at the supplemental hearing, that Plaintiff's previous work was more appropriately identified as a teacher's aide. (TR 21, 57). The VE testified that this job was classified as light, semiskilled work with a SVP of 3. (TR 57).

The VE further testified in response to hypothetical questioning that an individual with Plaintiff's RFC for work could perform her previous jobs as a case aide and teacher's aide. (TR 59). Plaintiff also contends that the ALJ erred by failing to make the necessary findings concerning the mental demands of Plaintiff's past relevant work.

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The ALJ must undertake a three-phase analysis at step four. In the first phase, the ALJ must evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her]

limitations." 20 C.F.R. § 404.1545(a)(1).  In the second phase, the ALJ must determine the mental and physical demands of the claimant's past relevant work. Bowman, 511 F.3d at 1272 (quotations and citation omitted); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1982 WL 31386, at 4 (1982).  In this phase, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Social Security Ruling 82-62, 1982 WL 31386, at 3; see Frantz, supra.  In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, 92 F.3d at 1023 (citations omitted).  The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

  Although the ALJ did not question Plaintiff concerning her previous jobs at either hearing, Plaintiff described her previous job which she identified as a "family support provider" on a form submitted to the agency. (TR 260).  At the supplemental hearing, the ALJ asked the VE to identify jobs that could be performed by an individual with an RFC for light work (with the postural and environmental restrictions as found by the ALJ) who could only perform "simple and some complex tasks, with superficial contact with co-workers and supervisors and the public. . . ." (TR 59).  The VE responded that this individual could perform Plaintiff's previous jobs as a case aide and teacher's aide.  Based on the VE's

testimony at the supplemental hearing, the ALJ found in his decision that Plaintiff's previous jobs as a case aide and teacher's aide "would not be eliminated from the [RFC] assessment. (TR 21).

The Commissioner contends that the ALJ properly relied on the VE's testimony in reaching the step four determination. The undersigned agrees. "It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the [VE]." Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may, however, "quote[ ] the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis." Id. In Doyal, the Tenth Circuit Court of Appeals found that no error occurred where the ALJ summarized the testimony of the VE in his decision, which, the ALJ stated," indicat[ed] that given [the claimant's] particular [RFC], the claimant can perform past relevant work," and then found that "[b]ecause [the claimant's] past relevant work did not require the performance of work activities precluded by her medically determinable impairments, I conclude that she is able to perform her past relevant work . . . ." Id.

In this case, the ALJ made a similar analysis in his decision by summarizing the VE's testimony and then stating the finding that Plaintiff's previous jobs were not precluded by her RFC for work. No error occurred in this respect, and the ALJ's decision, which is supported by substantial evidence in the record, should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before         March 5th , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     13th       day of      February         , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE